IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Northern Division

JASON ALAN GRIGGS,
DERENDA HANCOCK,
L. KIM GIBSON,
MISSISSIPPI HUMANIST ASSOCIATION,
and AMERICAN ATHEISTS, INC.,

      Plaintiffs,

      v.

CHRIS GRAHAM, COMMISSIONER OF
REVENUE, *in his official capacity*,

      Defendant.

Case No. 3:21-cv-416-CWR-LGI

**JURY TRIAL REQUESTED**

## COMPLAINT

## INTRODUCTION

1.     No state may force a person to be a mouthpiece for the government's preferred message. This freedom from compelled speech is a foundational tenet of American society. Yet the State of Mississippi demands exactly that from every single car owner[1] in the state. In so doing, the state is violating of nearly a century of settled First Amendment law.

---

[1] For the sake of brevity, Plaintiffs will generally refer to owners of motor vehicles and trailers, as those terms are defined in Miss. Code Ann. § 27-19-3(a) (2021), as "car owners."

2. Mississippi law requires most car owners to choose between displaying the state's standard license tag ("Standard Tag") on their vehicles or instead pay an additional fee to display a special tag of their choice ("Paid Specialty Tag"). Since 2019, the Standard Tag has contained an ideological, religious message, "IN GOD WE TRUST," and the vast majority of Mississippi's car owners have faced a choice: turn their personal vehicles into billboards for the state's message or pay an additional fee for a Paid Specialty Tag.

3. Other Mississippi car owners are not even afforded a choice. Mississippi residents who operate RVs, motorcycles, or trailers *must* display a license tag derived from the current Standard Tag design, with the state's accompanying message.

4. Perversely, any Mississippi car owner who wishes to use her vehicle to convey her own custom message by obtaining a personalized license tag ("Personalized Tag") with alphanumeric combinations of her own choosing is forced to also send the state's message because *only* the current Standard Tag design, rather than the designs of Paid Specialty Tags, can be personalized.

5. This statutory and regulatory regime violates numerous Mississippi car owners' right to be free from compelled speech. To remedy this violation, Mississippi must offer car owners an alternative to the Standard Tag.

6. This is not an action challenging the national motto. Nor is this an action challenging the Seal of the State of Mississippi. This is an action challenging the statutes, rules, policies, practices, and customs enforced by Defendant Chris Graham, as the Commissioner of Revenue, that together require Mississippi's nonreligious

drivers to display the government's preferred ideological, religious message on their vehicles or, if they refuse to do so, pay higher fees to legally drive their vehicles.

7.     These statutes, rules, policies, practices, and customs operate to impose on the Plaintiffs language with a long and substantial history of hostility toward atheists and other non-Christians.

## PARTIES

8.     Plaintiff Jason Alan Griggs ("Jason") is a resident of Brandon, Mississippi.

9.     Plaintiff Derenda Hancock ("Derenda") is a resident of Brandon, Mississippi.

10.     Plaintiff L. Kim Gibson ("Kim") is a resident of Jackson, Mississippi.

11.     The Mississippi Humanist Association ("MHA") is a 501(c)(3) nonprofit corporation based in Jackson, Mississippi. The MHA works toward providing opportunities for secular humanists to come together for social events and to volunteer and fundraise for charitable causes, as well as to inform and educate their fellow Mississippians about Humanism. The MHA has dozens of members across Mississippi.

12.     American Atheists, Inc. ("American Atheists"), is a 501(c)(3) nonprofit corporation based in Cranford, New Jersey. American Atheists is dedicated to the separation of religion and government and elevating atheists and atheism in our nation's public and political discourse. American Atheists has more than 350,000 members and supporters across the country, including in the State of Mississippi.

13.     Defendant Chris Graham is the Commissioner of Revenue of the Department of Revenue ("Commissioner"). By statute, the Commissioner, as head of

the Mississippi Department of Revenue, is responsible for administering and enforcing

Title 27 of the Mississippi Code, including the state's Motor Vehicle Privilege Taxes.

Miss. Code Ann. §§ 27-3-3, 27-19-1 (2021).

## JURISDICTION AND VENUE

14.     This is an action arising under 42 U.S.C. §§ 1983 and 1988 to redress the

deprivation, under color of state law, of rights secured by the First and Fourteenth

Amendments to the United States Constitution.

15.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil

Procedure and 28 U.S.C. §§ 2201 and 2202.

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

(federal question jurisdiction) and 1343 (civil rights jurisdiction).

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2). The

Defendant is located within the District and a substantial part of the events giving rise

to this claim occurred in this District.

18.     The Eleventh Amendment of the U.S. Constitution does not preclude this

Court's jurisdiction because the defendant, a state employee responsible for

enforcement of section 27-19-31 of the Mississippi Code, is sued here in his official

capacity for declaratory and injunctive relief prohibiting the future unconstitutional

enforcement of section 27-19-31(1) against the Plaintiffs. *Ex parte Young,* 209 U.S. 123,

154-56 (1908); *Verizon Md. Inc. v. PSC,* 535 U.S. 635, 645 (2002).

## FACTUAL ALLEGATIONS

**Mississippi License Tags**

19.     Mississippi car owners must display one valid license tag and decal on their vehicles and trailers at all times. A car owner who fails to do so is guilty of a misdemeanor and faces a fine of up to $25.00. Miss. Code Ann. § 27-19-31(2) (2021).

20.     The Defendant, as the Commissioner of the Mississippi Department of Revenue, is responsible for issuing license tags to Mississippi car owners and collecting the associated fees and taxes. § 27-19-31(1).

21.     The Defendant, in the course of enforcing section 27-19-31, has established regulations, policies, practices, and customs governing the operation of the Department of Revenue.

22.     Unless a car owner qualifies for certain narrowly defined categories, *see* ¶ 31, below, she must choose between a license tag designed by the Mississippi License Tag Commission ("Commission"), available at no added cost, or a Paid Specialty Tag, for which a car owner is required to pay an additional fee.

23.     Owners of trailers, RVs, and motorcycles do not have the option to place Paid Specialty Tags on these types of vehicles. These individuals *must* display "IN GOD WE TRUST" on their vehicles as part of a license tag derived from the current Standard Tag design.

24.     By statute, it is a misdemeanor punishable by a fine of up to $25 to deface, cover, or obstruct any portion of a license tag in a manner that obscures any of the characters on the tag. § 27-19-31(2).

25.     Section 27-19-31(1) directs the Mississippi License Tag Commission to issue a Standard Tag design for a period of 5 years for non-fleet motor vehicles of equal or less than 10,000 pounds gross vehicle weight and for non-fleet trailers.

26.     Pursuant to this statute, the Commission was to issue a new Standard Tag in 2017. However, delays in the allocation of funds for a new design resulted in the current Standard Tag being issued in 2019.

27.     The Standard Tag currently bears a design announced by then-governor Phil Bryant on Thursday, May 10, 2018. The design contains "MISSISSIPPI" in stylized letters centered at the top of the tag and the county of registration in capital letters centered at the bottom of the tag. Displayed between the name of the state and the name of the county is the registration of the vehicle to which it is affixed. The registration consists of three characters followed by a space followed by four characters. The design also features the state seal off-center over a background described as "bronze," "gold," or "dirt-colored."

28.     Mississippi adopted a new design for its state seal in 2014, adding the words "IN GOD WE TRUST" under the eagle depicted in the state's prior seal.

29.     Almost all of the seal, including the entirety of the words "IN GOD WE TRUST," appears in the space between the first three characters of the registration and the last four characters of the registration. Depending on the third and fourth character of the registration, a portion of the left-most and right-most edges of the seal may be obscured.

30.     Pursuant to section 27-19-31(1), the current Standard Tag will remain in

use in Mississippi until at least 2024.

31.     In addition to the Standard Tag issued by the License Tag Commission, Mississippi law provides special tags at no additional fee to individuals who fall within certain narrowly defined categories ("Alternate Tags"):

    a.    Active duty or retired armed forces: available to active or retired members of the Armed Forces of the United States, including the Army National Guard, Air National Guard, the United States Reserves, and the United States Merchant Marines, or their surviving spouses, upon providing proof of their membership in the form of a certificate signed by the member's commanding officer on forms prescribed by the Adjutant General of Mississippi; (Miss. Code Ann. § 27-19-51 (2021))

    b.    Government officials and veterans' group commanders: available to United States Senators; members of the United States House of Representatives; former United States Congressmen and Senators; State Commanders of the American Legion, Veterans of Foreign Wars, and The Forty and Eight; and enforcement and investigative personnel of the State Tax Commission, Public Service Commission, Mississippi Department of Public Safety, Mississippi Department of Transportation, or Mississippi Bureau of Narcotics, upon providing certification of eligibility; (Miss. Code Ann. § 27-19-46 (2021))

    c.    Ex-POWs and Medal of Honor recipients: available to former prisoners of war, recipients of the Congressional Medal of Honor, and their surviving spouses, upon providing proof of status; (Miss. Code Ann. § 27-19-54 (2021))

    d.    Hearing impaired (and hearing impaired motorcycle): available to deaf individuals upon providing the certification of a licensed physician; (Miss. Code Ann. § 27-19-56.9 (2021))

    e.    Purple Heart recipients: available to Purple Heart recipients (or the unremarried surviving spouse of a Purple Heart recipient) upon providing written proof of that status; and (Miss. Code Ann. § 27-19-56.5 (2021))

    f.    Sheriff's Office: available to sheriffs and sheriff's deputies for use on vehicles used in carrying out official sheriff's department duties. (Miss. Code Ann. § 27-19-55 (2021))

32.    Disabled Mississippians who do not qualify for a "disabled" variant of an Alternate Tag must display a "Disabled" tag, derived from the Standard Tag design and bearing the state seal with "IN GOD WE TRUST."

33.    Mississippi law further provides numerous types of Paid Specialty Tags that do not depend on the car owner's membership in any narrowly defined category and are therefore available to the vast majority of car owners. Many of the Paid Specialty Tags are designed to convey an ideological message or affiliation preferred by the car owner.  However, these special tags are only available upon payment of an

additional fee. Though the additional fee varies between special tag designs, most cost an additional $33.00 per tag per year.

34.      As separate tag design that does not include "IN GOD WE TRUST" or any other substantive message is available to the owners of oversized vehicles and farm vehicles.

**The Substantive, Ideological, Religious Message of the 2019 Standard Mississippi License Tag Design**

35.      On January 22, 2014, in his State of the State speech, then-Governor Phil Bryant stated:

> I continue to believe this is the right time to stand for our beliefs - our
>
> faith, our families, and our nation. To strengthen our resolve, I have
>
> asked that we take a bold step for God and country. I have called on
>
> Senator Michael Watson to introduce legislation that would change the
>
> wording on the Great Seal of the State of Mississippi to reflect our nation's
>
> motto. With your help, the seal of the State of Mississippi will, from this
>
> session forward, reflect the simple yet profound words 'In God We Trust'.

He expressed the same sentiment in a tweet that day from his @PhilBryantMS Twitter account.



36.     The change to the seal was proposed by then-state Senator Michael

Watson, Jr., through an amendment attached to Senate Bill 2681, the Mississippi

Religious Freedom Restoration Act.

37.     Watson, now the Mississippi Secretary of State, explained his motivation

to Magee News: "This phrase signals Mississippi's allegiance to God as well as our

country."

38.     Watson is now Mississippi Secretary of State and touts the change to the

seal as one of his legislative accomplishments.

39.     Lawmakers who voted for the bill acknowledged it as a statement of faith.

According state Senator Hillman Frazier, the amendment "made it very difficult for

some of the members" who might otherwise have voted against the bill. "Because it's

very hard to go to your district and explain why you voted against God."

40.     Following the state senate's passage of SB 2681, then-Lieutenant Governor

Tate Reeves took to Facebook on January 31, 2014, to express his pride at the bill's

statement of faith.



41.     According to Bryant, by February 18, 2014, a Change.org petition to

support the change had garnered 1,371 signatures and he urged other residents to voice

their support for the change.



42.     On July 1, 2014, the date the new state seal was announced, Governor

Bryant stated that "[t]hese words should strengthen our resolve and give us the courage

to stand for our principles in our state."

43.     Following the adoption of the new seal, Phil Bryant said in his 2015 State

of the State speech:

> I believe Mississippi can rise to a new level. But if we are to do so, we
>
> must set aside our petty, political differences and seek real solutions in
>
> both our economic and social environments. Last year, I asked you to
>
> make a simple but profound change to our state seal. Some said it was a
>
> waste of time, but we knew better. You see by simply adding our national
>
> motto to the Great Seal of the State of Mississippi, we professed our
>
> understanding of a higher power over the affairs of men. We expressed a
>
> faith that this wonderful state will continue to be blessed. Let us now and
>
> forever boldly and without apology affirm, "In God we trust."

He expressed the same sentiment in a tweet that day.



**Phil Bryant** ✔
@PhilBryantMS

Let us now and forever boldly and without apology affirm In God We Trust.

6:46 PM · Jan 21, 2015 · Twitter Web Client

44.    In 2016, state Representative Tom Miles introduced House Bill 840 to declare the "Holy Bible" as the official state book of Mississippi. (The bill did not specify to which version it referred.) While promoting House Bill 840, Rep. Miles highlighted the importance of the statement of faith that had been added to the state seal:

> A couple of years ago we had added "In God We Trust" to the state seal. Everybody's money that you pull out of your pocket says "In God We Trust." We thought that making it the official book of the state of Mississippi would be another way that we could re-confirm our faith.

45.    On May 10, 2018, Governor Bryant tweeted his delight that the message would also adorn the states standard license tag.



**Phil Bryant** ✔
@PhilBryantMS

I was proud to sign legislation in 2014 that added the United States National Motto, "In God We Trust," to the Mississippi State Seal. Today, I am equally delighted to announce that it will adorn our new Mississippi license plates. They will be available starting in January 2019.



9:37 AM · May 10, 2018 · Twitter for iPhone

46.     On June 10, 2019, after Mississippi began issuing the new Standard Tag, Tate Reeves, then a candidate for governor, released a campaign ad celebrating the phrase's inclusion in the design.  In the video, then-Lt. Gov. Reeves declares:

Mississippi has a brand new license plate, but out-of-state liberals hate it. It's because of these four words: "In God We Trust." The liberals from California and Washington are threatening to take Mississippi to court just because of this license plate. I know Mississippi's values are Mississippi's strength. Our next governor must defend our values every single day.

47.     On June 30, 2020, Governor Tate Reeves reinforced the ideological, religious nature of the message during his remarks on the signing of House Bill 1796, which placed "IN GOD WE TRUST" on the state flag:

A flag is a symbol of our present, of our people, and of our future. For those reasons, we need a new symbol.

Now I can admit that as young boy growing up in Florence, I couldn't have understood the pain that some of our neighbors felt when they looked at our flag—a pain that made many feel unwelcome and unwanted.

. . .

God tells us in 1 Corinthians 13:13 that the three great virtues are "faith, hope and love. But the greatest of these is love." I believe that all of us have to strive to reflect God's love for us.

We are all Mississippians and we must all come together. What better way to do that than include "In God We Trust" on our new state banner. As Lt. Governor, I fought to put those words on our state seal. We were attacked, threatened, and ultimately we were sued. I know the same forces will come after us again and I know this is a stronger line to hold. The people of Mississippi, black and white, and young and old, can be proud of a banner that puts our faith front and center.  We can unite under it.  We can move forward—together.

. . .

We may not always agree.  But as members of the Mississippi family, we do know the bonds we all share:  God's grace. Mississippi grit.  A foundation in our history, and a hope in our future.

48.     He stated a similar sentiment in a tweet of his own that day:



**Tate Reeves** ✔
@tatereeves                                          ...

Tonight, I signed the bill to retire the 1894 Mississippi
flag and begin the process of selecting a new one—
emblazoned with the words "In God We Trust."

Now, more than ever, we must lean on our faith, put
our divisions behind us, and unite for a greater good.

7:20 PM · Jun 30, 2020 · Twitter for iPhone

49.     The substantive, ideological, religious message sent by the phrase "IN

GOD WE TRUST" is unavoidable and has been the intended message whenever the

phrase has been used by the United States, as well as by state and local governments.

50.     The phrase "IN GOD WE TRUST" is rooted in hostility toward non-

Christians and atheists, intended to convey the message that non-belief in the Christian

god is un-American.

51.     According to the United States Treasury Department, "IN GOD WE

TRUST" began appearing on U.S. coins after the Secretary of the Treasury, S. P. Chase,

received a letter from a Ridleyville, PA, preacher in November 1861. In the letter, the

preacher remarked that a recognition of the Christian god on the Union's coins would "relieve us from the ignominy of heathenism." A week later, Secretary Chase instructed the Director of the Mint that "[t]he trust of our people in God should be declared on our national coins."

52.     Between November 20, 1861 and December 9, 1863, Secretary of the Treasury and the Director of the Mint discussed designs and language, ultimately settling on the phrase "IN GOD WE TRUST."

53.     Implementing the change required an act of Congress and on April 22, 1864, Congress passed a bill authorizing, among other things, a 2-cent coin that would be the first to bear the phrase. By 1873, the phrase was approved for placement on any new U.S. coin.

54.     "IN GOD WE TRUST" remained an artifact of U.S. currency until the Cold War. On February 21, 1955, President Eisenhower declared, "Without God, there could be no American form of Government, nor an American way of life. Recognition of the Supreme Being is the first—the most basic—expression of Americanism." Associated Press, *Eisenhower Urges Nation To Join 'Back to God' Drive*, New York Herald Tribune, Feb. 21, 1955, at 1; *see also Quotes*, Dwight D. Eisenhower Presidential Library, https://www.eisenhowerlibrary.gov/eisenhowers/quotes (last accessed Jul. 10, 2020). It was adopted by Congress as the official national motto on July 30, 1956.

55.     Congress enacted the new motto in order to differentiate the United States from the "godless Communists" and to be an atheist during this time was widely regarded as indistinguishable from being a Soviet agent. 102 Cong. Rec. at 5907 (1956).

56.     For many, then and now, to be an atheist, agnostic, or nonreligious is to be un-American and the motto "IN GOD WE TRUST" is intended to convey that hostile, exclusionary message.

**Plaintiffs**

Jason Alan Griggs

57.     Plaintiff Jason Alan Griggs is a medical researcher who describes himself as an atheist and secular humanist. He objects to displaying "IN GOD WE TRUST" on his vehicles for multiple reasons: He supports the separation between religion and government and believes that the inclusion of God on state-sponsored and state-regulated items establishes a national religion; he worries that those who belong to minority religions will, like him, be constantly reminded of their minority status; and he objects to being forced to profess a religious idea that he does not believe in.

58.     Jason owns four vehicles that require license tags. For his daily commute and other personal use, he owns a 2007 Toyota Highlander. He owns a trailer to use when doing yard work, home improvement projects, camping, and other activities. He also owns two vehicles that his sons drive: a 2000 Toyota Tacoma and a 2001 Subaru Forester.

59.     Although Jason objects to displaying "IN GOD WE TRUST" on his vehicles, the Defendant requires him to display it on his trailer. Mississippi law does not provide him with any alternative to displaying the Standard Tag, including "IN GOD WE TRUST," on his trailer.

60.     When Jason objected to Department of Revenue personnel and inquired

about obtaining a tag that did not contain "IN GOD WE TRUST" for his trailer, he was told he had no alternative.

61.    Because the state gave him no choice but to display "IN GOD WE TRUST" on one vehicle, Jason did not feel his concern would be addressed by paying additional fees to get specialty plates on some, but not all, of his vehicles. As a result, all of his vehicles display the Standard Tag and the state's preferred ideological, religious message, "IN GOD WE TRUST."

62.    Within the next twelve months, and every twelve months thereafter until a new Standard Tag design is in place, the Defendant will require Jason to choose between delivering the state's preferred message on each of his vehicles or paying an additional fee.

63.    Jason does not qualify for any of the Alternate Tags described in Paragraph 31, above. Even if he did, those tags are not permitted to be used on a trailer.

Derenda Hancock

64.    Plaintiff Derenda Hancock is a Co-Founder of We Engage, a 501(c)(3) nonprofit corporation based in Jackson, MS.

65.    Derenda describes herself as a radical atheist. She objects to displaying "IN GOD WE TRUST" on her vehicle because she objects to advertising a deity that she believes does not exist. She believes that others' religion should not dictate how she lives her life in any form or fashion and to have the government insist that she display a religious message on her vehicle violates her right to be free from religion.

66.    Derenda owns two vehicles: a 2004 Hyundai Tiburon and a 2021 Hyundai

Venue.

67.     Prior to January 2019, she always used standard tags on her vehicles. However, in January of 2019, when she went to the tag agency to replace the expiring tags on her Tiburon, she asked if there was an alternative to the Standard Tag, explaining, "I don't want Jesus riding on my car."

68.     Personnel at the tag agency stated that no alternatives were available that did not involve an added fee.

69.     Rather than display the state's preferred ideological, religious message on her car, Derenda paid an additional $32.00 to instead display the "Mississippi Blues Trail" Paid Specialty Tag on the Tiburon.

70.     When she purchased her Venue in 2021, she also chose to pay the additional $32.00 to display the "Mississippi Blues Trail" Paid Specialty Tag on that vehicle as well, rather than display "IN GOD WE TRUST."

71.     As a result of the Defendant's actions, Derenda was required to pay $32 annually in 2019 and 2020 in order to avoid having her personal property turned into a billboard to deliver the state's preferred ideological, religious message, "IN GOD WE TRUST." Beginning in 2021, that cost increased to $64 annually and will continue at that rate for the foreseeable future.

72.     Within the next twelve months, and every twelve months thereafter until a new standard tag design is in place, the Defendant will require Derenda to choose between delivering the state's preferred message on her vehicle or paying an additional fee.

73.     Derenda does not qualify for any of the Alternate Tags described in Paragraph 31, above.

Leslie Kim Gibson

74.     Plaintiff Leslie Kim Gibson is a Co-Founder of We Engage, a 501(c)(3) nonprofit corporation based in Jackson, MS.

75.     Kim is an atheist humanist. She objects to displaying "IN GOD WE TRUST" on her vehicle because she does not trust in any god. She is not among the "we" who trust in any deity and so she has no interest in displaying a false statement, a statement she considers to be theocratic, on her vehicle. She objects to the Mississippi government mandating that the residents of Mississippi, who hold a multitude of different beliefs, display the phrase on their vehicle or be penalized by paying an additional fee to obtain a Paid Specialty Tag.

76.     Kim owns one vehicle, a 2014 Buick Enclave, which she uses in her daily commute, for her volunteer work, and for personal use.

77.     When Kim objected to Department of Revenue personnel that she did not wish to display "IN GOD WE TRUST" on her vehicle, she was told her only other option was to pay an additional fee.

78.     Although she objects to displaying "IN GOD WE TRUST" on her vehicle, she chose not to pay extra for a Paid Specialty Tag in order to avoid giving the state any additional money that she believes it would mismanage.

79.     As a result of the Defendant's actions, Kim's vehicle displays the Standard Tag and the state's preferred ideological, religious message, "IN GOD WE TRUST."

80.     Within the next twelve months, and every twelve months thereafter until a new Standard Tag design is in place, the Defendant will require Kim to choose between delivering the state's preferred message on her vehicle or paying an additional fee.

81.     Kim does not qualify for any of the Alternate Tags described in Paragraph 31, above.

Mississippi Humanist Association

82.     Plaintiff Mississippi Humanist Association is a 501(c)(3) non-profit organization that seeks to be a welcoming group for secular humanists in Mississippi. As Humanists, MHA's members hold a philosophy of life that affirms their ability and responsibility to lead ethical lives of personal fulfillment that aspire to the greater good of humanity, without theism and other supernatural beliefs.

83.     This shared understanding motivates many of MHA's members to speak out against government advancement of religion in general and any specific religious viewpoint in particular. MHA's members believe it is morally imperative that government must treat all individuals equally, without regard to religious viewpoint, and that government action must not be motivated by religious claims.

84.     Although MHA does not own or operate any vehicles in Mississippi directly, many of the organization's members residing in Mississippi are car owners who do not qualify for any of the Alternate Tags described in Paragraph 31, above, and have been coerced to deliver the government's ideological, religious message.

85.     MHA's Board Secretary is a car owner, does not qualify for any Alternate

Tags, and displays a Paid Specialty Tag on her vehicle. She displayed the Standard Tag on her vehicle prior to the current Standard Tag design going into effect. In 2019, when forced to choose between installing the new Standard Tag on her vehicle or paying extra for a Paid Specialty Tag, she paid the additional fee in order to not display "IN GOD WE TRUST" on her vehicle.

86.     She and other car-owning members of MHA have standing to sue in their own right as a result of the Defendant, acting under color of state law, coercing them to deliver the state's preferred ideological, religious message, despite their objections.

87.     The state's coercion of MHA's members to deliver its preferred ideological, religious message is germane to the organizing purposes of MHA.

88.     Neither the claims asserted by MHA on behalf of its members, nor the relief requested, requires the participation of the individual members in this lawsuit.

89.     Within the next twelve months, and every twelve months thereafter until a new standard tag design is in place, the Defendant will require each of MHA's members who are car owners to choose between delivering the state's preferred message on each of their vehicles or paying an additional fee.

American Atheists, Inc.

90.     Plaintiff American Atheists is a 501(c)(3) civil rights organization dedicated to maintaining and strengthening the separation between religion and government and protecting the civil rights of atheists, and elevating atheism in our nation's public and political discourse.

91.     American Atheists' members hold numerous sincerely-held philosophies

and worldviews. These guiding principles share the understanding that there is, at most, insufficient evidence to support claims which assert the existence of any deity.

92.     This shared understanding motivates many of American Atheists' members to speak out against government advancement of religion in general and any specific religious viewpoint in particular. American Atheists' members believe it is morally imperative that government must treat all individuals equally, without regard to religious viewpoint, and that government action must not be motivated by religious claims.

93.     Although American Atheists does not own or operate any vehicles in Mississippi directly, many of the organization's hundreds of members and volunteers residing in Mississippi are car owners who do not qualify for any of the Alternate Tags described in Paragraph 31, above, and have been coerced to deliver the government's ideological, religious message.

94.     American Atheists' Assistant State Director for the Gulfport, Mississippi, region is a car owner and displays a Personalized Tag on her vehicle. If she wishes to continue using her license tag to deliver her own personalized message, she has no choice but to also deliver the state's preferred ideological message, to which she objects.

95.     The car-owning members of American Atheists who reside in Mississippi have standing to sue in their own right as a result of the Defendant, acting under color of state law, coercing them to deliver the state's preferred ideological, religious message, despite their objections.

96.     The state's coercion of American Atheists' members to deliver its preferred ideological, religious message is germane to the organizing purposes of American Atheists.

97.     Neither the claims asserted by American Atheists on behalf of its members, nor the relief requested, requires the participation of the individual members in this lawsuit.

98.     Within the next twelve months, and every twelve months thereafter until a new standard tag design is in place, the Defendant will require each of American Atheists' members in Mississippi who are car owners to choose between delivering the state's preferred message on each of their vehicles or paying an additional fee.

**CAUSES OF ACTION**

**Count 1: Violation of the Free Speech Clause
of the First Amendment to the U.S. Constitution
(42 U.S.C. § 1983)**

99.     Plaintiffs reassert all previous paragraphs.

100.    The First Amendment of the U.S. Constitution, as applied to the State of Mississippi through the Due Process Clause of the Fourteenth Amendment, prohibits a state actor from compelling an individual to speak the government's message against her will.

101.    The Defendant is a state actor and was, at all times relevant to this matter, acting under color of state law.

102.    The Defendant, through sections 27-3-3 and 27-19-1 of the Mississippi Code, is the official responsible for enforcing section 27-19-31, imposing the Standard

Tag on the Plaintiffs.

103.     The Standard Tag created by the Mississippi License Tag Commission sends an ideological message endorsed by the Defendant and the State of Mississippi. State officials intended the Standard Tag to send this message, as evidenced by their contemporaneous statements.

104.     The Defendant enforces Mississippi statutes and maintains regulations, policies, practices, and customs that require a car owner to display license tags delivering the State of Mississippi's chosen ideological message, on all RVs, trailers, or motorcycles she or he owns.

105.     The Defendant enforces Mississippi statutes and maintains regulations, policies, practices, and customs that require a car owner to display Standard Tags delivering the State of Mississippi's chosen ideological message on her private passenger vehicles unless the car owner either a) falls within the scope of several narrow classes of individuals whose special circumstances entitle them to an Alternate Tag or b) pays an additional fee to choose between a selection of Paid Specialty Tags delivering a variety of potential messages.

106.     Mississippi law imposes criminal penalties on anyone who conceals or removes the state's ideological message or any other characters from a vehicle's license tags. § 27-19-31(2).

107.     Plaintiffs disagree with the message delivered by the standard tag because of its ideological and religious content.

108.     As a direct consequence of Defendant's enforcement of Mississippi's

statutes and maintenance of these regulations, policies, practices, and customs,

Plaintiff Jason Griggs, Plaintiff Mississippi Humanists Association's members, and

Plaintiff American Atheists' members residing in Mississippi have been and will be

forced to continuously deliver the State of Mississippi's ideological message by

displaying a license tag derived from the current Standard Tag design at all times either

because they own trailers, motorcycles, and RVs, or because they are disabled and do

not qualify for a disabled variant of an Alternate Tag. They risk criminal penalty if they

remove or obscure any character of the license tag.

109.    As a direct consequence of Defendant's enforcement of Mississippi's

statutes and maintenance of these regulations, policies, practices, and customs,

Plaintiffs Jason Griggs, Derenda Hancock, and L. Kim Gibson, as well as the individual

members of Plaintiffs Mississippi Humanist Association and American Atheists who

reside in Mississippi, have been and will be forced to pay a penalty every year from

2019 onward in the form of an additional, annual fee to obtain a Paid Specialty Tag that

does not deliver the state's ideological message.

110.    As a direct consequence of Defendant's enforcement of Mississippi's

statutes and maintenance of these regulations, policies, practices, and customs,

Plaintiff American Atheists' members, who wish to use their license tags to deliver a

customized message of their own choosing by use of a Personalized Tag, are forced to

also continuously deliver the State of Mississippi's ideological message by displaying

"IN GOD WE TRUST" at all times on their personal vehicles.

111.    Plaintiffs each suffered injury as a direct consequence of the Defendant's

enforcement of these statutes and maintenance of these regulations, policies, practices, and customs.

112.    Plaintiffs each will be injured again as a direct consequence of the Defendant's enforcement of these statutes and maintenance of these regulations, policies, practices, and customs.

113.    Defendant' unconstitutional acts directly and proximately caused injury to the Plaintiffs.

114.    An injunction prohibiting the Defendant from imposing any fees, taxes, or other costs, above and beyond the amount required to obtain the Standard Tag, on any Mississippi car owner who objects to the display of "IN GOD WE TRUST" on her personal vehicle is necessary to prevent further violation of the Plaintiffs' right to be free from compelled speech.

115.    An injunction prohibiting the Defendant from requiring any Mississippi car owner who owns a trailer, RV, or motorcycle and who objects to the display of "IN GOD WE TRUST" on their personal vehicles to display a license tag derived from the current Standard Tag design is necessary to prevent further violation of the Plaintiffs' right to be free from compelled speech.

116.    An injunction prohibiting the Defendant from requiring any Mississippi car owner who wishes to use her vehicle to deliver her own message through the use of a Personalized Tag to also display "IN GOD WE TRUST" on their vehicles is necessary to prevent further violation of the Plaintiffs' right to be free from compelled speech.

**Count 2: Violation of the Free Exercise Clause**

**of the First Amendment to the U.S. Constitution**
**(42 U.S.C. § 1983)**

117.    Plaintiffs reassert all previous paragraphs.

118.    The First Amendment of the U.S. Constitution, as applied to the State of

Mississippi through the Due Process Clause of the Fourteenth Amendment, prohibits

the government from favoring or disfavoring particular religious beliefs or the lack

thereof. Specifically, the Free Exercise Clause prohibits the government from treating

"*any* comparable secular activity more favorably than religious exercise." *Tandon v.*

*Newsom*, ___ U.S. ___, 141 S. Ct. 1294, 1296 (2021) (emphasis in original). This neutrality

is the "minimum requirement" of the Free Exercise Clause. *Roman Catholic Diocese v.*

*Cuomo*, ___ U.S. ___, 141 S. Ct. 63, 66 (2020) (quoting *Church of Lukumi Babalu Aye, Inc.*

*v. Hialeah*, 508 U. S. 520, 533 (1993)).

119.    Within the context of the Free Exercise Clause, the exercise of sincerely

held beliefs "which occup[y] in the life of its possessor a place parallel to that filled by

the God" are protected as religious exercise. *United States v. Seeger*, 380 U.S. 163, 176

(1965). This includes beliefs and belief systems that do not include (or affirmatively

exclude) any belief in a deity. *Welsh v. United States*, 398 U.S. 333, 340 (1970).

120.    Government actions that are either not neutral or lack general

applicability and that burden the free exercise of beliefs are subjected to strict scrutiny.

121.    By "putting [the Plaintiffs] to the choice of" displaying the state's

explicitly religious message or paying a penalty, the Defendant has required the

Plaintiffs to engage in activity that violates their sincerely held beliefs and coerced

them to engage in religious exercise to which they object. *Fulton v. City of Philadelphia*, 593 U.S. ___, 2021 U.S. LEXIS 3121, 12 (2021).

122.    The statutes, rules, policies, practices, and customs enforced by Defendant Chris Graham, as the Commissioner of Revenue, are not neutral. Not only is "IN GOD WE TRUST" an expressly religious message, but the public statements of Mississippi officials, including former governor Phil Bryant, Governor Tate Reeves, former state senator Michael Watson, Jr., and others, demonstrate that hostility toward the Plaintiffs and other Mississippi car owners who lack religious beliefs was a motivation for selecting the current Standard Tag design. "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs . . . ." *Id.* at 13.

123.    The statutes, rules, policies, practices, and customs enforced by Defendant Chris Graham, as the Commissioner of Revenue, are not generally applicable. Mississippi law contains a plethora of individual exemptions that allow certain people, depending on their circumstances, to avoid choosing between displaying Mississippi's preferred religious message or paying an additional fee. As the Supreme Court recently reiterated, "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Id.* at 15. "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it 'invite[s]' the government to decide which reasons for not complying with the policy are worthy of solicitude . . . ." *Id.* at 20 (alteration in original).

124.    The Defendant, through sections 27-3-3 and 27-19-1 of the Mississippi Code, is the official responsible for enforcing section 27-19-31, imposing the Standard Tag on the individual Plaintiffs and the members of Plaintiffs Mississippi Humanist Association and American Atheists who reside in Mississippi. Despite existing exemptions for several classes of individuals and vehicles, the Defendant has not extended a like exemption to the Plaintiffs that would preserve their rights under the Free Exercise Clause of the First Amendment.

125.    The Defendant lacks a compelling interest in imposing the Standard Tag on the Plaintiffs and section 27-19-31 is not the least restrictive means of furthering what minimal interest the Defendant may have.

126.    Defendant's unconstitutional acts directly and proximately caused injury to the Plaintiffs.

127.    An injunction prohibiting the Defendant from imposing any fees, taxes, or other costs, above and beyond the amount required to obtain the Standard Tag, on any Mississippi car owner who objects to the display of "IN GOD WE TRUST" on her personal vehicle is necessary to prevent further violation of the Plaintiffs' right to be free from hostile, religiously biased government action that coerces religious exercise.

128.    An injunction prohibiting the Defendant from requiring any Mississippi car owner who owns a trailer, RV, or motorcycle and who objects to the display of "IN GOD WE TRUST" on their personal vehicles to display a license tag derived from the current Standard Tag design is necessary to prevent further violation of the Plaintiffs' right to be free from hostile, religiously biased government action that coerces

religious exercise.

129.    An injunction prohibiting the Defendant from requiring any Mississippi car owner who wishes to use her vehicle to deliver her own message through the use of a Personalized Tag to also display "IN GOD WE TRUST" on their vehicles is necessary to prevent further violation of the Plaintiffs' right to be free from hostile, religiously biased government action that coerces religious exercise.

## REQUEST FOR RELIEF

For the foregoing reasons, the Plaintiff respectfully requests that the Court grant the following relief:

A.    A declaration that section 27-19-31 of the Mississippi Code, as applied to those who object to the message delivered by the current Standard Tag, results in unconstitutional compelled speech in violation of the Free Speech Clause of the First Amendment, as applied to the State of Mississippi through the Fourteenth Amendment;

B.    Permanent injunctive relief against Defendant in his official capacity prohibiting him from charging additional or increased fees to Mississippi car owners who do not wish to endorse the state's ideological message, "IN GOD WE TRUST," by displaying it on their vehicles;

C.    Permanent injunctive relief against Defendant in his official capacity prohibiting him from requiring Mississippi residents who own trailers, RVs, and motorcycles and who object to the display of "IN GOD WE TRUST" on their vehicles to obtain a license tag derived from the current Standard Tag design;

D.      Permanent injunctive relief against Defendant in his official capacity prohibiting him from requiring Mississippi car owners who wish to use their vehicles to deliver their own message through the use of a Personalized Tag to also display "IN GOD WE TRUST" on their vehicles;

E.      Plaintiffs' reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

F.      Such other relief as the Court deems just and proper.

Respectfully submitted,

_____
Dianne Herman Ellis
ELLIS LAW FIRM, PLLC
1145 Robinson Avenue
Ocean Springs, Mississippi 39564
228-215-0037- Office
228-284-1889- Facsimile
662-607-8576- Cellular
www.EllisLawFirmMS.com

Geoffrey T. Blackwell*
Alison M. Gill*
AMERICAN ATHEISTS LEGAL CENTER
American Atheists, Inc.
1100 15th St. NW, Fourth Floor
Washington, D.C. 20005

*Counsel for Plaintiffs*

*Motion for admission pro hac vice to follow*