IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Northern Division

JASON ALAN GRIGGS,
DERENDA HANCOCK,
L. KIM GIBSON,
MISSISSIPPI HUMANIST ASSOCIATION, and
AMERICAN ATHEISTS, INC., PLAINTIFFS

v.   CASE NO. 3:21-cv-416-CWR-LGI

CHRIS GRAHAM,
JONATHON TATE REEVES,
LYNN FITCH,
DAVID MCRAE,
SHARON NASH BARNETT,
EDDIE J. FAIR,
KAY PACE, and
CAROLINE GILBERT, each in his or her official capacity, DEFENDANTS.

**PLAINTIFFS' MEMORANDUM OF AUTHORITIES IN OPPOSITION
TO STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

INTRODUCTION

Defendants Graham, Reeves, Fitch, and McRae (the "Commission Defendants") seek to obfuscate the coercive nature of the state's action in this case by arguing for an interpretation of Mississippi law that is wholly unsupported by the text. By doing so, they have not altered the simple fact that Mississippi compels the speech of car owners. All they have accomplished is a multiplication of the messages the state will allow car owners to deliver. What a car owner still may not do is *choose not to speak* using their vehicle.

The scope of behavior encompassed by § 27-31-19(2) is not determinative, so interpretation of the statute is not necessary to decide the Defendants' motion. Even if it were dispositive, the plain and unambiguous text of the statute prohibits obscuring or defacing any portion of a license tag in such a way that any characters cannot be read. The Defendants urge this Court to interpret the text of the statute to only apply only to acts which prevent identifying the vehicle. This interpretation ignores that the statute both encompasses and distinguishes conduct that prevents identification on the one hand and conduct that prevents any portion of the plate from being read on the other. The Court should conclude that the statute means exactly what it says and decline to adopt the Defendants' convoluted interpretation.

The Defendants ask this Court to ignore or rewrite significant sections of § 27-31-19(2). Their interpretation is a thinly veiled pretext intended to avoid the review of their actions by the federal judiciary. The U.S. Supreme Court has, for well over a century, made clear that even the interpretation utilized by a state supreme court is not entitled to deference under such circumstances. The Defendants in this matter are not the Mississippi Supreme Court and their proffered interpretation of § 27-31-19(2) is entitled to even less deference.

**RULE 12(C) STANDARD**

A motion for judgment on the pleadings pursuant to Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially

noticed facts. . . . The standard for dismissal under Rule 12(c) is the same as that under Rule 12(b)(6)." *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020) (cleaned up). Judgment on pleadings is appropriate only where "'it is clear that the plaintiff can provide no set of facts'" to support the claim for relief. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 213 (5th Cir. 2002) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

Construing the factual allegations in the light most favorable to the Plaintiffs, as the courts must in deciding a 12(c) motion, this Court may and should deny the Defendants' motion for judgment on the pleadings for the reasons below.

## ARGUMENT

**I. The Scope of Conduct Prohibited by § 27-19-31 is Not Determinative of Either of Plaintiffs' First Amendment Claims**

    A.    Mississippi's "In God We Trust" License Tag Violates Individuals' Right Not to Speak, Regardless of the Existence of a Criminal Sanction.

Contrary to the Commission Defendants' assertions, the Plaintiffs' case is not premised solely on the existence or applicability of the penalty imposed under § 27-19-31(2) (2021), although the statutory imposition of misdemeanor criminal sanctions for obscuring characters on a license plate undeniably accentuates the coercive nature of the Defendants' actions. The State Defendants' meager attempt to wriggle out of their constitutional obligations through a absurd interpretation of the statute, even if

accepted by the court, would merely substitute one form of compelled speech for another:

> [T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and *the right to refrain from speaking at all.* A system which secures the right to proselytize religious, political, and ideological causes must also guarantee the concomitant right to decline to foster such concepts. The right to speak and the right to refrain from speaking are complementary components of the broader concept of "individual freedom of mind."

*Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (quoting *W. Va. Bd. Of Educ. V. Barnette*, 319 U.S. 624, 637 (1943)) (emphasis added). This "negative free speech right," as Chief Justice Rehnquist termed it, *Pacific Gas & Electric Co. v. Public Utilities Com.*, 475 U.S. 1, 26 (1986) (Rehnquist, J., dissenting), to refrain from participating in public discourse is constitutionally equivalent to the individual's right to engage in expressive activity. *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 797 (1988). "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the Act as a content-based regulation of speech." *Id.* at 795. Content-based speech regulations must meet the stringent demands of strict scrutiny. *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 641-42 (1994); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Widmar v. Vincent*, 454 U.S. 263, 269-70 (1981); *Hersh v. United States*, 553 F.3d 743, 765-66 (5th Cir. 2008).

The Mississippi License Plate Commission, made up of the Commission Defendants, decided to place an ideological and religiously hostile message on the State's standard license tag. This action, by their own reasoning, forces car owners to engage in expressive activity they would otherwise have avoided. Dkt. 26 at 18-19. This

act cannot be justified as a narrowly tailored means of achieving any compelling (or even legitimate) state interest.

The "solution" offered by the State Defendants, namely that those who object can cover "all or part of the State seal portion of Mississippi's license tag (including the phrase "IN GOD WE TRUST") with a sticker or decal," Def. Memo of Auth. at 19, or with "tape, paint, etc.," *Id.* at 18, is nothing less than a requirement that those who object to the government's preferred message must engage in conspicuous expressive activity in order to disclaim the government's message. Such a requirement is constitutionally indistinguishable from a scheme that does not permit the speaker to disclaim the speech they are being required to deliver.

Because the government is compelling the Plaintiffs to engage in expressive activity regardless of the Commission Defendants' interpretation of § 27-19-31(2), their motion for judgment on the pleadings pursuant to Rule 12(c) must fail as to the first count in the Plaintiffs' Amended Complaint.

> B.  The option for Plaintiffs to conceal the government's required, religiously hostile message does not eliminate the burden on Plaintiffs' free exercise.

The Commission Defendants' interpretation of § 27-19-31(2) has even less bearing on Plaintiffs' free exercise claim than it does on their compelled speech claim. The government demands that the Plaintiffs attach a message explicitly denouncing their own beliefs to their private property—a message rooted in open hostility toward

them.[1] This places a substantial burden on the Plaintiffs' exercise of their nontheistic beliefs. That burden is in no way lessened because the government deigns to give them the option to cover up the hateful message they are forced to carry with them everywhere they drive.

As a general rule, the government does not violate its obligations under the Free Exercise Clause of the First Amendment if the act in question was religiously neutral and of general applicability. *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990). "The Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, ___ U.S. ___, 138 S. Ct. 1719, 1731 (2018). A government act is not one of general applicability "'where the State has in place a system of individual exemptions'" but "'refuse[s] to extend that system to cases of religious hardship without compelling reason.'" *Fulton v. City of Philadelphia*, ___ U.S. ___, 141 S. Ct. 1868, 1877 (2021) (quoting *Smith*, 494 U.S. at 884). When a government action is either not religiously neutral or not of general applicability it must be subjected to strict scrutiny, requiring a "showing [from the government] that its restrictions on religion both serve a compelling interest and are narrowly tailored." *Masterpiece Cakeshop, Ltd.*, 138 S. Ct. at 1734 (Gorsuch, J., concurring); *see also Fulton*, 141 S. Ct. at 1876; *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546

---

[1] The Commission Defendants have not challenged Plaintiffs' factual allegations that the phrase "IN GOD WE TRUST," it's adoption as the national motto, it's inclusion in the official seal of the State of Mississippi, and its subsequent inclusion on Mississippi's standard license tag. Nor could they do so. "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases *where the material facts are not in dispute* . . . ." *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020) (emphasis added).

(1993). Furthermore, "the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd.*, 138 S. Ct. at 1731; *see also Church of Lukumi Babalu Aye*, 508 U.S. at 546.

The Defendants' actions here are neither neutral nor generally applicable. In light of the lengthy history of the national motto and the recent events in Mississippi that resulted in the phrase appearing on Mississippi's standard license tag, which the Commission Defendants do not dispute and this Court must assume in deciding the present motion, the lack of religious neutrality in the words "IN GOD WE TRUST" is obvious. That the government might not[2] punish the Plaintiffs for covering up the words is of no consequence.

The lack of neutrality alone would require the application of strict scrutiny but in addition to not being religiously neutral, the Defendants' actions here are not generally applicable either. The State provides a number of individual exemptions that allow some to display a different license tag that does not bear the words "IN GOD WE TRUST," yet it provides no like exemption to those who object to it because it imposes a burden on the exercise of their atheistic beliefs. This fact also provides an independent justification for the application of strict scrutiny.

---

[2] The Plaintiffs respectfully request that this Court take judicial notice that law enforcement officers sometimes pull over drivers who obscure the state seal or the words "IN GOD WE TRUST" in their license plates, despite that act being entirely legal under the Commission Defendants' proffered interpretation of § 27-19-31(2).

Because the Defendants' actions here are neither neutral nor generally applicable, the Defendants must demonstrate that their actions are narrowly tailored to achieve a compelling government interest. The Commission Defendants' own proffered interpretation of § 27-19-31(2) unavoidably demonstrates that the inclusion of "IN GOD WE TRUST" on the state's standard license tag advances no compelling interest of the state, let alone constitute a "narrowly tailored" measure for achieving such an interest.

"But you can cover it up!" the Commission Defendants argue. Nowhere in the framework laid out above is such an argument even relevant. Whether forced to actually display the State's hateful message publicly or not, the Commission Defendants' actions force the Plaintiffs to carry the message with them wherever they go. Whether on their back bumper, their back window, behind a layer of paint, or buried in the bottom of their trunk, the government burdens the Plaintiffs' exercise of their atheistic beliefs when it forces them to take and retain the license tag bearing the words "IN GOD WE TRUST"—or pay an additional fee—when the Plaintiffs' beliefs would have them never accept a plate bearing such a message in the first place.

In case it is not already clear that the Commission Defendants' interpretation of § 27-19-31(2) has no bearing on the Plaintiffs' free exercise claim, a hypothetical role reversal will help illustrate the point. If a state put on its official seal the phrase "THERE ARE NO GODS," emblazoned the seal on its standard license tags, and forced every car owner to either attach that message to their vehicle or pay extra for a plate that wasn't a direct attack on theistic belief systems, that would burden theists' free

exercise of religion. That burden would not be alleviated by the government giving them the *additional burden* of deciding whether and how to cover up the message. The burden is in forcing them to carry the message at all.

## II.     The State Defendants' Interpretation of § 27-19-31(2) is Fatally Flawed.

Not only is the scope of § 27-19-31(2) not determinative of Plaintiffs' claims in this case, the statute is unambiguous and can be read no other way than to encompass the conduct that the Plaintiffs describe: It requires that, among other things, "*all* characters" on the license plate are to be kept unobstructed, with the sole and express exception of the "county name" which can "be partially or completely obscured from view." § 27-19-31(2) (emphasis added). Aside from the county name, the obstruction of "*any* portion" of the license tag is prohibited. Failure to comply with this requirement constitutes a misdemeanor offense and "shall be punished by a fine of not more than Twenty-Five dollars ($25.00)." *Id.* The Defendants spend more than five pages arguing that the words "all characters" do not mean "all characters."[3] This argument is laughable. The plain language of the statute, taken as a whole as this Court must, shows the State Defendants' arguments to be utterly without merit.

---

[3] The State Defendants seem unduly preoccupied with font sizes and the distances from which registration number on the tag must be readable. *See* Dkt. # 26 at 15. Plaintiffs contend that such matters are wholly irrelevant to the claims and defenses in the case at bar. To the extent that this Court finds such matters are nevertheless worth some modicum of consideration, Plaintiffs suggest that, when the Court considers the reasonableness of the parties' respective interpretations of § 27-19-31(2), Plaintiffs' interpretation requires less than three pages to lay out, while the Commission Defendants needed to devote more than five to explain their cobbled-together interpretation. The Plaintiffs urge the Court to afford both font size and page count exactly the weight they deserve.

C.      The scope of conduct prohibited by § 27-19-31(2)

The Plaintiffs contend that § 27-19-31(2) is unambiguous and leaves no room for the State Defendants' tortured interpretation. A statute is unambiguous when the plain text, read in its full context, permits only one reasonable interpretation. In the case that the text of the statute is "plain and unambiguous," the intent of the legislature is deemed by Mississippi's courts to be just what the statute says. *Lewis v. Hinds Cty. Circuit Ct.*, 158 So. 3d 1117, 1122 (Miss. 2015) (quoting *Conway v. Miss. State Bd. of Health*, 173 So. 2d 412, 415 (Miss. 1965)); *City of Cleveland v. Mid-South Assocs., LLC*, 94 So. 3d 1137 (Miss. 2011) ("We are bound to follow the clear language of the statute as it is our best guide to the Legislature's intent."). There is no room for interpretation or statutory construction under those circumstances. *Lewis*, 158 So. 3d at 1122. Section 27-19-31 is just such a statute and the casuistry engaged in by the State Defendants' in an effort to conclude otherwise has no place in this analysis.

The statute at issue has three parts. Section 27-19-31(1) describes the manner in which license tags are to be issued and renewed for motor vehicles, though it leaves the licensing of certain classes of vehicles (none relevant here) to the Department of Revenue. It also provides for the issuing of "license decals, in lieu of license tags" to indicate the tag's expiration date. *Id.* Section 27-19-31(2) describes the elements of the license tag, the manner in which license tags and decals are to be displayed and maintained, and imposes penalties for failure to comply. Lastly, § 27-19-31(3) authorizes the Department of Revenue to engage in appropriate rulemaking.

The remedial provisions of § 27-19-31(2) encompass four classes of conduct on the part of car owners: 1) "defac[ing], cover[ing] or obstruct[ing] from view" "[s]uch license plate, *all characters* and any legally affixed decals," except the county name; 2) failing to properly fasten the license tag and decals to the vehicle as provided; 3) defacing a tag or decal to such an extent "that proper identification cannot be reasonably made"; and 4) replacing a tag that has deteriorated due to age to such an extent that "identification cannot be reasonably made." *Id.* (emphasis added).

The statute is quite clear when it comes to the first class of conduct:

> Such license plate, **all characters** and any legally affixed decals shall not be defaced, covered or obstructed from view by any object, decal, sticker, paint, marking or license plate bracket or holder. Any person who defaces, covers or obstructs **any portion of a license tag** with any sticker, decoration, paint, marking, license plate bracket or holder or any other thing or device, **in such a manner that the characters** and any legally affixed decals on the tag **cannot be read**, shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than Twenty-five Dollars ($25.00). However, it shall not be unlawful for the county name to be partially or completely obstructed from view by any object, decal, sticker or license plate bracket or holder.[4]

*Id.* (emphasis added). The statute mandates that this penalty be imposed and it does so without regard to whether the tag was defaced, covered, or obstructed in such a manner that "identification cannot be reasonably made." *Id.* This is in direct contrast to the third and fourth classes of conduct, which involve plates so damaged as to make

---

[4] To the extent the Court finds it necessary, Merriam-Webster provides the following definitions: "all" is defined as "the whole amount, quantity, or extent of," "All," *Merriam-Webster.com Dictionary* (Apr. 6, 2022) https://www.merriam-webster.com/dictionary/all; "any" is defined as "one or some indiscriminately of whatever kind," "Any," *Merriam-Webster.com Dictionary* (Apr. 6, 2022) https://www.merriam-webster.com/dictionary/any; "character" is defined as "a graphic symbol (such as a hieroglyph or alphabet letter) used in writing or printing," "Character," *Merriam-Webster.com Dictionary* (Apr. 6, 2022) https://www.merriam-webster.com/dictionary/character.

identification impossible. *Id.* To the contrary, all that is required for a car owner to be guilty of a misdemeanor under § 27-19-31(2) is for *any* character on the tag (except for the county name) to be *unreadable*. *Id.*

If a license tag is so damaged that "identification cannot be reasonably made," either by defacement or by deterioration due to age, the tag must be replaced. *Id.* In the case of defacement, law enforcement may confiscate the tag and issue a tag permit giving the car owner five days to obtain a substitute tag and pay the associated fee. *Id.* Alternatively, the car owner may obtain a substitute tag without law enforcement first confiscating the defaced tag. *Id.* In the case of natural deterioration, the car owner may obtain a substitute tag at no cost. *Id.*

Read as a whole, the statute is unambiguous. The legislative intent is clear: defacing, covering, or obstructing a license tag, including *any character* save for the county name alone, is a misdemeanor offense; defacement of the tag to the extent the vehicle cannot be identified further authorizes law enforcement to confiscate the tag, requiring the car owner to pay an additional fee to replace the tag; but no penalty or fee is imposed if identification is prevented by deterioration resulting from normal wear and tear on the tag over time.

The plain and unambiguous intent of the statute is to prohibit exactly the conduct that would be necessary if the Plaintiffs wished to mark out or conceal the characters "IN GOD WE TRUST." The statute admits of no other interpretation.

D.  The State Defendants' interpretation ignores the plain text of the statute.

The Commission Defendants argue that the intent of the statute is "to limit the prohibition on covering to certain 'characters' other than those at issue in Plaintiffs' Amended Complaint." Dkt. 26 at 9. Specifically, the Commission Defendants argue that the prohibition does not extend to characters "neither contemplated by the statute nor used for identification." *Id.* This is clearly not the case. Furthermore, the Commission Defendants' interpretation appears entirely pretextual and they offer no evidence to suggest that their novel interpretation is that utilized by law enforcement officers tasked with enforcing the statute.

> 1. *The legislature plainly addressed defacement that prevents identification as well as other forms of defacement and subjected both forms to punishment.*

As discussed above, § 27-19-31(2) plainly addresses the defacement of license tags and includes within its scope both defacement that prevents "proper identification" from being "reasonably made" and defacement that merely prevents "the characters and any legally affixed decals on the tag" from being "*read*." § 27-19-31(2) (emphasis added). Both acts are made a misdemeanor punishable by a fine of no more than $25.00 but acts which prevent the vehicle from being identified additionally require the car owner to pay for a substitute tag and can result in law enforcement officers confiscating the tag and giving the car owner five days to obtain a replacement.

Elsewhere in § 27-19-31, the legislature has used specific terms to identify specific elements of the tag where pertinent. *Id.* The statute defines "the number of the tag," "the word 'MISSISSIPPI'," the "county name," and "license decals." If Mississippi's

lawmakers intended § 27-19-31(2) to impose a misdemeanor penalty only on conduct that obscured one or more of those elements of the tag, they could have done so. They did not. Instead, in a 1994, the legislature added the above-quoted language encompassing "all characters" on the tag, excepting specifically the county name. The statute is unequivocally encompasses the whole of the tag, not merely those elements necessary for identification.

The legislature's express requirement that the name of the state may not in any way be even partially concealed is revealing as well.[5] While the statute allows the *county* name to be obscured, it does not allow the name of the *state* to be covered, despite the fact that the name of the state is not needed to identify the vehicle. *Id.* The only reasonable conclusion to be reached from this distinction is that the legislature understood that there are characters on the plate that are not necessary for identification and intended that the defacement of those characters relating to the state (but not the county) would constitute a misdemeanor nonetheless. The Commission Defendants' argument requires this Court to make the significant logical leap that, though the legislature prohibited the state name from being in any way concealed, it would find obscuring the state seal to be perfectly acceptable. The Commission

---

[5] If the Court nevertheless concludes that the statute is ambiguous, the long-standing interpretive canon of negative implication, *expression unius est exclusion alterius*, leads to the conclusion that the legislature's specific exclusion of the county name, and the county name *only*, from the elements of the tag that can be defaced, covered, or obscured strongly indicates that the legislature intended the misdemeanor offense laid out in § 27-19-31(2) to include obscuring anything else on the plate, including other words the Department of Revenue might add through appropriate rulemaking. § 27-19-31(3).

Defendants offer no legitimate justification for their interpretation of the statute, other than that it serves their immediate needs in the present suit.

        2.    *The Commission Defendants interpretation of § 27-19-31(2) appears entirely pretextual.*

The Commission Defendants offer nothing to suggest that the interpretation that they offer of § 27-19-31(2) is anything but a pretext to avoid this Court's review of a violation of the First Amendment. Although such circumstances are rare, the Supreme Court has repeatedly acknowledged that *even the interpretations of state supreme courts need not be accepted if* "it is an obvious subterfuge to evade consideration of a federal issue." *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129 (1945); *see also Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 725-26 (2010); *Mullaney v. Wilbur*, 421 U.S. 684, 961 n. 11 (1975); *Broad River Power Co. v. South Carolina*, 281 U.S. 537, 540 (1930); *Ward v. Board of County Comm'rs*, 253 U.S. 17, 22 (1920); *Terre Haute & I. R. Co. v. Indiana*, 194 U.S. 579, 589 (1904). "To ensure that there is no 'evasion' of [the federal judiciary's] authority to review federal questions, [the Supreme Court] insist[s] that the nonfederal ground of decision have 'fair support.'" *Stop the Beach Renourishment, Inc.*, 560 U.S. at 526 (quoting *Broad River Power Co.*, 281 U.S. at 540). The Commission Defendants are not the Mississippi Supreme Court and their interpretation of § 27-19-31(2) is therefore not entitled to even that degree deference from this Court. The Commission Defendants' interpretation of § 27-19-31(2) is nonsensical, not authoritative, and the justifications offered to support it rest on the thinnest of foundations.

In support of their argument that defacing, covering, or obscuring the state seal or the words "IN GOD WE TRUST" is permitted by the statute, the Commission Defendants offer little independent justification other than the bald assertion that "it is not uncommon in this state to encounter motorists who have covered all or part of the State seal portion of Mississippi's license tag (including the phrase 'IN GOD WE TRUST') with a sticker or decal." Dkt. # 26 at 19. They proffer no rules promulgated by the Department of Revenue, no guidance documents, advisory opinions, training materials, or any other records to document that theirs is actually the interpretation relied on by those responsible for enforcement. This failure to support their proffered interpretation of § 27-19-31(2) utter fails to provide the "fair support" that the Mississippi Supreme Court would need to provide in order to justify the avoidance of the vital federal question raised by this case.

As stated in note 2, above, the Plaintiffs respectfully request that this Court take judicial notice of the fact that law enforcement officers sometimes pull over drivers who obscure the state seal or the words "IN GOD WE TRUST" in their license plates. The Commission Defendants offer nothing to document that their convoluted interpretation of § 27-19-31(2) is the interpretation actually utilized by law enforcement when enforcing the statute. The threat of a traffic stop as a result of obscuring the words "IN GOD WE TRUST" is sufficient to discourage the Plaintiffs and other Mississippi car owners from making any alterations to the license tags they are issued, or to pressure them to pay the additional fee for a specialty tag rather than be subjected to a traffic stop. Unless the Commission Defendants can demonstrate that their

interpretation of the statute comports with that of law enforcement officers at the state and local level, it does little to lessen the coercive pressures placed on the Plaintiffs to conform to the government's expectations.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully urge this court to DENY the Commission Defendants' motion for judgment on the pleadings.

Respectfully submitted,

/s/ Dianne Herman Ellis
Dianne Herman Ellis
ELLIS LAW FIRM, PLLC
1145 Robinson Avenue
Ocean Springs, Mississippi 39564
228-215-0037- Office
228-284-1889- Facsimile
662-607-8576- Cellular
www.EllisLawFirmMS.com

Geoffrey T. Blackwell*
AMERICAN ATHEISTS LEGAL CENTER
1201 S. Courthouse Rd.
Unit 425
Arlington, VA 22204

Alison M. Gill*
AMERICAN ATHEISTS LEGAL CENTER
American Atheists, Inc.
1100 15th St. NW, Fourth Floor
Washington, D.C. 20005
*pro hac vice*

*Counsel for Plaintiffs*