## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

JASON ALAN GRIGGS, et al.,

|                                    |
| ---------------------------------- |
| *Plaintiffs,*                      |

*v.*                                              CAUSE NO. 3:21-CV-416-CWR-LGI

CHRIS GRAHAM, et al.,

*Defendants.*

## ORDER

Before the Court are the Defendants' motion for judgment on the pleadings and the Plaintiffs' motion for leave to file a sur-rebuttal. Docket Nos. 25 and 32. On review, the motions will be granted.

## I.      Factual and Procedural History

Jason Alan Griggs lives in Rankin County, Mississippi. He, joined by others, brought this suit because he objects to the forced display of "In God We Trust" on his state-issued license plate – sometimes called a "car tag." "No state may force a person to be a mouthpiece for the government's preferred message," he writes. Docket No. 11 at 1. "Yet the State of Mississippi demands exactly that from every single car owner in the state." *Id.*

Chris Graham is the Commissioner of the Mississippi Department of Revenue. He was named as a defendant in this case because the Department of Revenue is the state agency authorized to tax vehicles. *See* Miss. Code Ann. § 27-19-1. Graham is also a member of the state License Tag Commission, the governmental body responsible for designing the license plate. *Id.* § 27-19-155.

Mississippi's standard license plate currently looks like this:



The bronze and blue circle in the middle of the license plate is the Great Seal of the State of Mississippi. The words along the bottom of the Seal read "In God We Trust."

Since 2019, this design has been the default license plate issued throughout the State. It is, in fact, the only tag available to RV, motorcycle, and trailer owners.[1] This tag is set to be phased out beginning in 2024, in favor of a new design.[2]

Because license plate fees are important to the Plaintiffs' case, what follows will briefly describe the types of license plates available in Mississippi and their general fee structure.

In addition to standard car tags, the Department of Revenue has hundreds of "specialty tags" available for purchase. Most of them benefit an organization or cause, like the 4-H Club, the Blair E. Batson Children's Hospital, or Jackson State University.[3] These kinds of specialty tags cost drivers extra money each year. Much of that extra money goes to

---

[1] The standard license plate may also be the sole design available for persons with disabilities, church buses, school buses, taxis, and hearses. *See* Miss. Dep't of Revenue, Available License Plates, https://www.dor.ms.gov/tagstitles/available-drivers-license-plates (last visited Feb. 8, 2023).

[2] *See* Miss. Dep't of Revenue, Tag Design Contest, https://www.dor.ms.gov/tags-and-titles/tag-design-contest (last visited Feb. 8, 2023).

[3] *See* Miss. Dep't of Revenue, Available License Plates, https://www.dor.ms.gov/tagstitles/available-drivers-license-plates (last visited Feb. 8, 2023).

the named organization or cause.[4] The precise fee structure for each specialty tag is determined by statute. *E.g.*, Miss. Code Ann. § 27-19-56.4.

The Department of Revenue also offers several specialty tags that come with a modest one-time fee – as opposed to an annual fee. Purple Heart recipients, amateur radio enthusiasts, and antique car owners, among others, pay for their specialty tag once and only once.[5]

Lastly, the Department of Revenue has a handful of free specialty tags. They are limited to persons who can establish membership in groups like the Veterans of Foreign Wars, or former members of the United States Congress.[6,7]

The Plaintiffs do not challenge the Seal, which has displayed the words "In God We Trust" since 2014. Nor do the Plaintiffs challenge that phrase being printed on currency. *See O'Hair v. Murray*, 588 F.2d 1144 (5th Cir. 1979). They instead take issue with being forced to carry the State's "ideological, religious message" on their private vehicles, when there is no free non-religious design option available. Docket No. 11 at 2. They say they cannot simply cover up the offending words because that would constitute a misdemeanor punishable by a $25 fine. *Id.* at 2-3.

The Plaintiffs have amply pleaded the religious intent behind the motto. In his 2015 State of the State, then-Governor Phil Bryant said that "simply adding our national motto to

---

[4] *See* Miss. Dep't of Revenue, Special Tag Fee Distribution, https://www.dor.ms.gov/tagstitles/special-tag-fee-distribution (last visited Feb. 8, 2023).

[5] *Id.*

[6] *Id.*

[7] The Plaintiffs allege that customizable "vanity plates" are available only against the backdrop of the default, "In God We Trust" design. That was true when the Amended Complaint was filed. Since then, however, the state has created customizable "blackout" plates – consisting of white lettering on an all-black background. Their existence does not moot this case because they are not free.

the Great Seal of the State of Mississippi . . . professed our understanding of a higher power over the affairs of men." *Id.* at 13. In 2018, Governor Bryant then expressed his "delight" that "In God We Trust" would adorn Mississippi's new license plates. *Id.* at 14.

The Plaintiffs have provided examples of Governor Bryant's successor, Governor Tate Reeves, making similar statements. *Id.* at 14-18. In the Plaintiffs' telling, Governor Reeves' statements "reinforc[e] the message that atheists, nonreligious individuals, and members of minority religions are outsiders and not 'real' Mississippians." *Id.* at 16. The Plaintiffs, citing the very real nature of their citizenship in our great state of Mississippi, respectfully disagree with this message.

Griggs, a medical researcher who raises his family in Rankin County, supports the separation of church and state and "worries that those who belong to minority religions will, like him, be constantly reminded of their minority status." *Id.* at 19. He cannot avoid the "In God We Trust" motto because, in addition to his passenger vehicles, he owns a trailer for yard work, and there is no other tag available for trailers. *Id.* at 20.

Plaintiff Derenda Hancock runs a nonprofit based in Jackson. She objects "to advertising a deity that she believes does not exist," "believes that others' religion should not dictate how she lives her life in any form or fashion," and seeks to enforce her right "to be free from religion." *Id.* at 21. Hancock objects to the standard license plate design so vehemently that she purchases specialty tags for each of her vehicles. *Id.* "I don't want Jesus riding on my car," she says. *Id.*

4

Plaintiff Leslie Kim Gibson, a paralegal, is a Mississippi native.[8] She "has no interest in displaying a false statement" on her vehicle and objects to the government mandating "theocratic" messages on her personal property. *Id.* at 22. When forced to pick a license plate, however, she chose the standard design "in order to avoid giving the state any additional money that she believes it would mismanage." *Id.* at 23.

The remaining Plaintiffs are the Mississippi Humanist Association and American Atheists, Inc. They are non-profit membership organizations. The Humanists "aspire to the greater good of humanity, without theism and other supernatural beliefs." *Id.* at 23-24. The Atheists find "insufficient evidence to support claims which assert the existence of any deity." *Id.* at 25. Both organizations advocate for the government to treat all persons equally, without regard to religious viewpoint. *Id.* at 24-25.

Together, the Plaintiffs argue that the inclusion of "In God We Trust" on Mississippi's standard license plates violates their Free Speech and Free Exercise rights guaranteed by the First Amendment to the U.S. Constitution. *Id.* at 27-33. They have sincerely-held beliefs that are not being treated equally under the law, they say, since there is no standard non-religious license plate for cars, RVs, motorcycles, and trailers. *Id.* at 31. The Plaintiffs seek declaratory and injunctive relief requiring Mississippi to provide them equal treatment under law. *Id.* at 34.

The Plaintiffs have named an assortment of state and county officials as defendants. In addition to Graham, the defendants include Governor Reeves, Attorney General Lynn Fitch, Treasurer David McRae (together, the "State Defendants"), and four county Tax

---

[8] *See* https://www.weengage.org/our-team

Collectors. Each defendant has a form of responsibility under Mississippi law for the design, enforcement, or tax collection of car tags.

Graham and the other State Defendants filed a motion for judgment on the pleadings. Docket No. 25. They argue that Mississippi law permits the Plaintiffs and all other objectors to cover up "In God We Trust" without penalty. *Id.* at 9-10. "In truth, Your Honor, Mississippi law does not prohibit the plaintiffs from simply covering up the phrase . . . so it's not visible at all," their counsel said at the hearing." Docket No. 36 at 7. As long as the identifying characters of the tag are reasonably visible, they say, the Plaintiffs are free to cover or scratch-off language that violates their sincerely-held beliefs. Docket No. 25 at 9-10.

## II.   Legal Standard

Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citations omitted).

## III.   Discussion

The First Amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . ." U.S. Const. amend. I. "The First Amendment, of course, is applicable to the States through the Fourteenth Amendment." *Bigelow v. Virginia*, 421 U.S.

809, 811 (1975) (citing *Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 160

(1939)).

### A.      Free Speech

The analysis begins with the Mississippi statute at issue. It provides, in relevant part:

> Such license plate, **all characters** and any legally affixed decals shall not be
> defaced, covered or obstructed from view by any object, decal, sticker, paint,
> marking or license plate bracket or holder. Any person who defaces, covers or
> obstructs any portion of a license tag with any sticker, decoration, paint,
> marking, license plate bracket or holder or any other thing or device, in such a
> manner that the **characters** and any legally affixed decals on the tag cannot be
> read, shall be guilty of a misdemeanor and, upon conviction, shall be punished
> by a fine of not more than Twenty-five Dollars ($25.00). However, it shall not
> be unlawful for the county name to be partially or completely obstructed from
> view by any object, decal, sticker or license plate bracket or holder. . . .

> Law enforcement officers of this state shall remove from a motor vehicle or
> trailer any license tag and/or decals which are so defaced that proper
> identification cannot be reasonably made.

Miss. Code Ann. § 27-19-31(2) (emphasis added).

The parties disagree about what this statute means.

In the State Defendants' view, only the "characters" and "decals" must be visible, at a

minimum so that "identification can[] be reasonably made." *Id.* The thrust of the State

Defendants' argument is that the letters forming "In God We Trust" are not characters within

the meaning of the statute, because the words "In God We Trust" are not used for

"identification."

This argument has a certain appeal. For one, "In God We Trust" cannot possibly be

used for identification, since it is common to all standard license plates throughout

Mississippi. In addition, the phrase's font size is so small as to be impossible to read from afar—in marked contrast to the seven characters that comprise the tag's unique identity.[9]

As the Plaintiffs observe, however, "In God We Trust" consists of a series of characters. Since the statute prohibits persons from covering up "all characters," they maintain that persons are also prohibited from covering up "In God We Trust."

The Plaintiffs make a strong argument in emphasizing the plain language of the statute. When the statutory text is not ambiguous, the plain language must govern.[10] *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). "The preeminent canon of statutory interpretation requires the court to presume that the legislature says in a statute what it means and means in a statute what it says there." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (citation and brackets omitted). Under this line of cases, the Plaintiffs are presumptively correct that the words "all characters" in § 27-19-31(2) mean exactly what they say.

The Plaintiffs then land another solid textual blow when they observe that the Legislature's express grant of permission for drivers to cover the "county name" on the tag implies the Legislature's withholding of permission to cover "In God We Trust." *See* Docket No. 28 at 14 n.5; *see also* Scalia & Garner, Reading Law 107-11 (2012). The Mississippi Legislature established a blanket prohibition against covering any character or decal, but then

---

[9] The Plaintiffs do not like this interpretation of state law. They observe that the State Defendants are not the Mississippi Supreme Court and are therefore unable to render an authoritative interpretation of § 27-19-31(2). That is true. The decisions of the U.S. Supreme Court, however, bind everyone—the State Defendants, the Mississippi Supreme Court, and this Court—and as we will see, the U.S. Supreme Court has spoken on this subject.

[10] The State Defendants' argument is largely predicated upon "legislative intent." Docket No. 26 at 15. This is a disfavored means of understanding a textual authority. *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982).

explicitly excluded "county name" from that prohibition. This suggests that if the Mississippi Legislature wanted to exclude more, it knew how to do so.

The parties then discuss whether § 27-19-31(2) is ambiguous. Perhaps it is not so clear that "characters" includes characters in a watermark, like "In God We Trust," that has no identification purpose.[11] The State Defendants press that they still win if the statute is ambiguous, though, because the rule of lenity precludes criminal punishment based upon an ambiguous statute. Docket No. 26 at 16-17. That is a notable argument coming from the State's top law enforcement official.

The U.S. Supreme Court once resolved a similar dilemma. *Wooley v. Maynard*, 430 U.S. 705 (1977), was mentioned only in passing in the parties' briefs, but it very well may control this situation.

The facts of *Wooley* are straightforward. New Hampshire law required license plates to display the State motto: "Live Free or Die." New Hampshire law also made it a misdemeanor "to obscure the figures or letters" on the license plate. But George Maynard and his wife were Jehovah's Witnesses. They considered the motto "repugnant to their moral, religious, and political beliefs," so they covered it up. Mr. Maynard was promptly convicted of a misdemeanor, fined, and (on his second offense) sentenced to 15 days in jail.

On appeal, the Supreme Court found that Mr. Maynard had a First Amendment right to cover "Live Free or Die" on his license plate.

"[W]e are faced with a state measure which forces an individual, as part of his daily life indeed constantly while his automobile is in public view to be an instrument for fostering

---

[11] The statute does not define "characters" and the parties have not attempted to provide their own definition.

public adherence to an ideological point of view he finds unacceptable," the Court wrote. 430 U.S. at 715. It held that forcing Mr. Maynard to display a message he believed to be "morally, ethically, religiously and politically abhorrent" was unconstitutional. *Id.* at 713.

> The fact that most individuals agree with the thrust of New Hampshire's motto is not the test; most Americans also find the flag salute acceptable. The First Amendment protects the right of individuals to hold a point of view different from the majority and to refuse to foster, in the way New Hampshire commands, an idea they find morally objectionable.

*Id.* at 715. Even after taking into account New Hampshire's interests in proper identification of vehicles and the promotion of "history, individualism, and state pride," Mr. Maynard's constitutional rights still prevailed. *Id.* at 716.

This case is very similar. The Plaintiffs object to the forced display of a state-endorsed message on their state-issued license plates. They find the message "hostile" and "hateful." Docket No. 28 at 4 and 6. Their beliefs are sincere and deeply rooted. As a political minority, the Plaintiffs are unable to convince their fellow voters or the state authorities to change course. But state law prohibits them from covering up the message.

Accordingly, as in *Wooley*, the Plaintiffs have articulated a violation of their First Amendment free speech rights. They cannot be compelled to display "In God We Trust" on their license plate.

What remains is the remedy. Recall that the Plaintiffs seek an injunction requiring the state to provide them with non-religious license plates. Specifically, Griggs wants a trailer tag that does not carry a religious message, while Hancock wants a non-religious tag without being forced to pay extra money. In this sense, Hancock is objecting to a de facto "atheism tax" that Mississippi imposes on her and all other persons who "don't want Jesus riding on [their] car," as she put it.

In *Wooley*, however, the Supreme Court did not require New Hampshire to create a blank license plate for persons who objected to "Live Free or Die." No, the remedy in that case was an injunction blocking New Hampshire "from arresting and prosecuting [the Wooleys] at any time in the future for covering over that portion of their license plates that contains the motto 'Live Free or Die.'" 430 U.S. at 709. In other words, the Supreme Court put the burden of compliance on the objectors—they were allowed to cover up the message—and then enjoined the state criminal law that penalized that action.

Today's Plaintiffs have not been prosecuted for covering up "In God We Trust." They have not covered up the words (yet). If they are ever prosecuted for non-compliance with § 27-19-31(2), though, they will be able to mount a strong defense by pointing to the legal interpretation of the state's top law enforcement official in this case and the U.S. Supreme Court's injunction in *Wooley*.

The Plaintiffs say that is cold comfort because over-zealous police officers and sheriff's deputies will pull them over for obscuring "In God We Trust." Yes. That is an unavoidable risk. At the same time, a person subjected to such treatment is likely to prevail in his or her ensuing § 1983 lawsuit alleging a deprivation of constitutional rights. After all, it has been clearly established since 1977, nearly 50 years, that law enforcement may not punish a person for obscuring a state motto on a license plate.

All in all, the Court concludes that the Plaintiffs have pleaded a free speech violation but are not entitled to an injunction requiring Mississippi to create neutral license plates. This claim will be dismissed.

B.    Free Exercise

In Count II of their Amended Complaint, the Plaintiffs allege that the State has breached its duty of neutrality by elevating persons who believe in God while simultaneously "demonstrat[ing] . . . hostility toward the Plaintiffs and other Mississippi car owners who lack religious beliefs." Docket No. 11 at 31. "Despite existing exemptions for several classes of individuals and vehicles, the Defendants have refused to extend a like exemption to the Plaintiffs that would preserve their rights under the Free Exercise Clause of the First Amendment." *Id.* at 32. The Plaintiffs essentially argue that because the State offers free license plates to some groups, it must provide non-religious license plates to them at no additional cost.

Free exercise means "the right to express those beliefs and to establish one's religious (or nonreligious) self-definition in the political, civic, and economic life of our larger community." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 737 (2014) (Kennedy, J., concurring). The government cannot "force [a person] to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance." *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15–16 (1947). The government cannot, for example, impose a choice that would result in persons paying a "fine" to freely exercise their beliefs. *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). Nor can it "impose requirements which aid all religions as against non-believers." *Torcaso v. Watkins*, 367 U.S. 488, 495 (1961).

The Supreme Court has repeatedly reaffirmed "the State's obligation of religious neutrality." *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1723 (2018). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs

12

or restricts practices because of their religious nature." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877 (2021). "The Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion." *Masterpiece Cakeshop*, 138 S. Ct. at 1731 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993)). "[T]he principle of neutrality has provided a good sense of direction: the government may not favor one religion over another, or religion over irreligion, religious choice being the prerogative of individuals under the Free Exercise Clause." *McCreary Cnty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844, 875–76 (2005).

The Plaintiffs' argument proceeds from the proposition that the Constitution protects their sincerely-held beliefs in humanism or atheism just as strongly as it protects religious beliefs. The Supreme Court endorsed that view when it held that "sincere and meaningful beliefs that prompt the registrant's objection . . . need not be confined in either source or content to traditional or parochial concepts of religion." *Welsh v. United States*, 398 U.S. 333, 339 (1970).

> If an individual deeply and sincerely holds beliefs that are purely ethical or moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, those beliefs certainly occupy in the life of that individual 'a place parallel to that filled by * * * God' in traditionally religious persons.

*Id.* at 340. In other words, as far as the law is concerned, "'intensely personal' convictions which some might find 'incomprehensible' or 'incorrect' come within the meaning of 'religious belief.'" *Id.* at 339 (quoting *United States v. Seeger*, 380 U.S. 163, 184-85 (1965)). The Supreme Court has recently confirmed that "the federal courts have no business addressing whether the religious belief . . . is reasonable." *Hobby Lobby*, 573 U.S. at 724 (parentheses omitted).

13

Here, if the Plaintiffs' allegations are taken as true, as they must be at this stage, they have alleged how Mississippi's standard license plate is intolerant of their own sincerely-held beliefs. The Plaintiffs *don't* trust in God. And the fact that there are free non-religious license plates for other people, but not for them, strikes them as acting without "the religious neutrality that the Constitution requires." *Masterpiece Cakeshop*, 138 S. Ct. at 1724. Only they are burdened with the obligation to deface their car tag or pay a tax for a non-religious tag.

Still, at the end of the day, the Court's job is to identify the closest governing legal authority to the facts at hand. That is *Wooley*. "Whatever the confluence of speech and free exercise principles might be in some cases," *id.* at 1723, when it comes to contested state mottos on license plates, the Supreme Court has already announced its decision. The remedy is for the objector to cover the contested language, not for the State to create a separate license plate.

The Plaintiffs no doubt believe that more recent free exercise cases promise them greater rights to neutrality than this single 1977 case. They may be right. Perhaps the Supreme Court will see fit to remand this dispute to the state License Tag Commission for a selection process that affords "the religious neutrality that the Constitution requires." *Id.* at 1724. For today, though, this Court finds persuasive the reasoning of the three-judge district court in *Wooley*, which concluded its decision with the following:

> Although there is evidence that New Hampshire could easily issue plaintiffs license plates that do not contain the motto— the state presently manufactures vanity plates to order at a cost of $5— we decline to issue an injunction ordering the state officials to do so. The relief we have ordered should fully protect plaintiffs in the exercise of their First Amendment rights, and we would be ill-advised to interfere further with the operation of New Hampshire's system of vehicle identification.

*Maynard v. Wooley*, 406 F. Supp. 1381, 1389 (D.N.H. 1976).

Given the similarities between that case and our own, resolving the Plaintiffs' claims any differently than *Wooley* might invite error. It is instead up to the Supreme Court to decide whether it wishes to enforce the Plaintiffs' free exercise rights in a different manner. As this Court has explained in a different context, *see Jackson Women's Health Org. v. Currie*r, 349 F. Supp. 3d 536, 545 (S.D. Miss. 2018), *aff'd sub nom. Jackson Women's Health Org. v. Dobbs*, 945 F. 3d 265 (5th Cir. 2019), *rev'd* 142 S. Ct. 2228 (2022), if their desire is to overturn *Wooley*, they will have to seek that relief from a higher court. Accordingly, the Plaintiffs' free exercise claim will be dismissed.

## IV.   Conclusion

The motions are granted. A separate Final Judgment shall issue.

**SO ORDERED**, this the 2nd day of March, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE